UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| RICK M. PARKS, and DEBBIE J. PARKS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | No. 2:14-cv-00036-LJM-WGH |
| ) | |
| FREUD AMERICA, INC., and ) | |
| HOME DEPOT U.S.A., INC., ) | |
| ) | |
| Defendants. ) | |

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Freud America, Inc. ("Freud") and Home Depot U.S.A., Inc. ("Home Depot") (defendants, collectively, "Defendants"), have moved for summary judgment on the personal injury claims brought against them by plaintiffs Rick M. Parks ("Rick") and Debbie J. Parks ("Debbie") (collectively, "Plaintiffs"). For the reasons stated herein, the Court **GRANTS in part and DENIES in part** Defendants' Motion for Summary Judgment.

### I. FACTUAL & PROCEDURAL BACKGROUND

The undisputed facts, for purposes of this motion, and/or the facts in the light most favorable to Plaintiffs are these:

On August 21, 2012, Rick purchased an AvantiPro 7" x 1/16" metal cutoff disc ("AvantiPro disc") from the Home Depot located in Wentzville, Missouri. Compl. ¶ 4. On September 15, 2012, prior to using the AvantiPro disc, Rick completed a physical examination of the disc and confirmed that there were no chips or chunks anywhere on the blade. Rick Parks Dep. at 115-16. After he installed the AvanitPro disc and before making any cuts, Rick turned on the DeWalt grinder and ran the Avanti Pro disc at high

speed for over a minute to confirm that there were no undetected cracks or flaws in the disc. *Id.* at 69. However, Rick was injured when the disc failed during use. Compl. ¶¶ 5 & 6.

Plaintiffs' liability expert, Dr. Jendrzejewski, opined that the AvantiPro disc failed as a result of cracks that are shown as linear indications.[1] Jendrzejewski Dep. at 179. He further opined that these alleged cracks occurred during the manufacturing process. *Id.* at 167, 177. Dr. Jendrzejewski testified that he identified these alleged cracks by looking at an X-ray. *Id.* at 88-89. He stated that the alleged cracks did not go through the material on the outside of the AvantiPro disc, such as the cellulose and black-colored material. *Id.* Dr. Jendrzejewski opined that there are multiple things that could have caused the AvantiPro disc to fall apart, including improper use and excessive force applied by the user. *Id.* at 151-52; 164-65.

Home Depot is a retail that markets and sells consumer products, including Avanti-Pro metal cut-off discs. Compl. ¶ 3; Home Depot's Ans. to Compl. & Affirm. Defenses, ¶ 3; Home Depot's Ans. to Pls.' First Interrogs. No. 3. Home Depot did not design or manufacture the AvantiPro disc purchased by Rick. Home Depot's Ans. to Pls.' First Interrogs. No. 16.

Home Depot has not received any claims of personal injury related to the AvantiPro disc, except for Rick's. Home Depot's Ans. to Pls.' First Interrogs. No. 11. When a customer claims he was injured by a product, Home Depot collects additional information

---

[1] Defendants disagree and dispute the opinions and conclusions of Dr. Jendrezejewski, however, state that, even if the Court accepts his opinions as true, they are still entitled to summary judgment. Dkt. No. 81 at 4 ns. 1 & 2.

2

from them such as the injury and the actual incident that led to the injury.  Suggs Dep. at 49-50, 72.

With respect to returns, the BEAR Return to Vendor Guide (the "Guide") represents Home Depot's standards and protocols regarding how Home Depot collects return data through its cashiers; cashiers regularly utilize the Guide during their training.  Suggs Dep. at 11, 18-19; Home Depot's Ans. to Pls.' First Interrogs. No. 20.  The term "Manufacturer Defect" is one of several reason codes available to a cashier.  BEAR Return to Vendor Guide at HD00023.  According to the Guide, "the decision on which reason code to assign can be a subjective one . . . .  On customer returns, the benefit of the doubt goes to defective."  BEAR Return to Vendor Guide at HD00111.  Home Depot has a liberal return policy and does not question the customer's stated reason for a return.  Suggs Fed. R. Civ. P. 30(b)(6) Dep. at 32.  According to Home Depot's corporate representative, customer descriptions are typed into Home Depot's database by the cashier at the time a customer makes a return and are either verbatim statements or a short summary, depending on the length.  Claus Dep. at 33; Suggs Dep. at 19.  These comments later appear on the Return to Vendor Report ("RTV Report").  *Id.*

Home Depot regularly receives an RTV Report that lists the reason codes entered by Home Depot cashiers when accepting a return from a customer.  BEAR Return to Vendor Guide at HD00023; RTV Report, HD00122-24; Home Depot Rule 30(b)(6) Dep. at 17-19.  The RTV Report assists Home Depot to identify problems and safety issues with regard to its products.  RTV Report, HD00122-24; Home Depot Rule 30(b)(6) Dep. at 17-19.  Home Depot admits that recording the information in the RTV Report is an important task in terms of product safety.  Home Depot Rule 30(b)(6) Dep. at 30.  In the

year prior to Rick's injury, Home Depot's RTV Report indicated that more than 100 AvantiPro discs had been returned and the cashier coded it as "Manufacturer Defect." RTV Report, HD00122-24.

For example, the RTV Report listed the following information, among other entries, regarding consumer returns of the AvantiPro disc:

| Return Comment | Return Reason Code |
| --- | --- |
| blades came off hit customer | Manufacturer Defect |
| broke during use | Manufacturer Defect |
| broke in half first use | Manufacturer Defect |
| ring blew out the center | Manufacturer Defect |
| broke apart when used | Manufacturer Defect |
| try [sic] to cut with it and broke in half | Manufacturer Defect |
| blade fell apart on customer's first use | Manufacturer Defect |
| blew up on second use | Product Safety Issue |
| broke while gentleman was using it | Manufacturer Defect |

RTV Report at HD00122-23.

Home Depot did not convey the information in the RTV Report regarding the AvantiPro disc to Freud America.  Home Depot Rule 30(b)(6) Dep. at 35-36.

Dr. Jendrzejewski testified that he did not consider the RTV Report to form his opinion.  Jendrzejewski Dep. at 165.  Further, he testified that he had no opinion on whether or not Home Depot would have had knowledge of the alleged defect based upon the RTV Report.  *Id.* at 165-66.

Freud is the distributor that sells certain AvantiPro discs to Home Depot, including the AvantiPro disc at issue in this action.  Compl. ¶ 2; Freud's Am. Ans. to Compl. & Affirm. Defenses, ¶ 2 ("Freud's Ans.").  Freud did not design or manufacture the disc purchased by Rick.  Freud's Ans. ¶ 2; Brewer Dep. at 9, 15; Freud's Ans. to Pls.' First Interrogs. Nos. 14-16; Freud's Mot. for Leave to File First Am. Ans. to Compl. & Affirm. Defenses.  On multiple occasions, both Freud and Home Depot identified Carborundum

4

Universal Limited ("Carborundum") as the entity that designed and manufactured the AvantiPro disc purchased by Rick. Brewer Dep. at 15; Freud's Ans. to Pls.' First Interrogs. No. 14; Home Depot's Ans. to Pls.' First Interrogs. No. 16. To date, Plaintiffs have not moved to amend their Complaint to name Carborundum in this matter. *See, generally*, Dkt. The label on the AvantiPro disc indicates that the disc was "made in India." Jendrzejewski Report at 14.

Further, Freud is not the first in line in the distribution change after Carborundum, rather, Carborundum sells the AvantiPro disc to Scintilla AG, a Swiss entity. Freud Resp. to Pls.' First Interrogs. No. 18. Scintilla AG sells the AvatiPro disc to Robert Bosch Tool Corporation. Dkt. No. 81 at 2. Freud is 100% owned by Robert Bosch Tool Company. Dkt. No. 9. Freud's description of the distribution chain is:

> A freight/transporter picks up the bulk shipment at a port in India and then transports by ship to the United States. The shipment is then trucked to Lincolnton, North Carolina, where the bulk wheels are separated out into retail packaging. Once packaged for retail, the products are trucked to Freud's High Point distribution center for shipment to retailers.

Freud's Resp. to Pls.' First Interrogs. No. 13.

However, Freud designed the label affixed to the disc. Freud Rule 30(b)(6) Dep. at 11-13. In addition, the product identification number imprinted on the AvantiPro disc label is a "Freud America number." *Id.* at 56-57. Further, Freud prepared the following artwork that appears on the label: "images of the angle grinder and I-beam, the AnantiPro logo and phrases "Metal Cut-Off' and 'info@AvantiProTools.com," and the model number 'PBD070063701F' and the Universal Product Code." Freud's Supp. Resp. to Pls.' First Interrogs. No. 10. Freud also organized the layout of the label. *Id.* The label does not identify Carborundum as the manufacturer of the disc nor does the name "Freud America,

5

Inc." or "Freud" appear on the label. Jendrzejewski Rep. at 14. The tradename, "AvantiPro," belongs to Freud. Freud's Supp. Ans. to Pls.' First Interrogs. No. 10.

For the year preceding Rick's purchase of the AvantiPro disc, Freud distributed 244,196 individual AvantiPro 7" x 1/16" metal cut-off discs to Home Depot. Freud's Ans. to Pls.' Second Interrogs. No. 3.

After he was injured, Rick contacted info@avantiprotools.com and received a response from Freud. Pls.' Ex. H, FRE00298. Freud then sent Rick a letter stating, "Since Freud America is self-insured for this type of claim, we are enclosing a 'Claim Acknowledgement Form.'" Pls.' Ex. I, FRE000303.

## II. **SUMMARY JUDGMENT STANDARD**

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267–68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(a), which provides in relevant part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials showing that a fact either is or cannot be genuinely disputed. Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists whenever "there is sufficient

6

evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Goodman v. Nat'l Sec. Agency, Inc.*. 621 F.3d 651, 654 (7th Cir. 2010).  It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence.  *See Goodman*, 621 F.3d at 654; *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party.  *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996).  The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment.  *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996).  Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute.  *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).  If the moving party does not have the ultimate burden of proof on a claim, it is sufficient for the moving party to direct the court to the lack of evidence as to an element of that claim.  *See Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 & n.3 (7th Cir. 1994). "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must

be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### III. DISCUSSION

#### A. STRICT LIABILITY PURSUANT TO INDIANA CODE § 34-20-2-3

Defendants argue that they cannot be strictly liable to Plaintiffs pursuant to the Indiana Products Liability Act ("IPLA") because they did not manufacture the AvantiPro disc. Dkt. No. 81 at 7-10; Dkt. No. 89 at 8-18. Plaintiffs contend that Home Depot could be held liable as a manufacturer because there is evidence from which a jury could conclude that it was a seller with actual knowledge of a product defect. Dkt. No. 84 at 13-14. Further, Plaintiffs assert that Freud could be held liable as a manufacturer because the Court cannot assert personal jurisdiction over Carborundum; therefore, as the principal distributor of the AvantiPro disc, Freud fits the definition of a manufacturer. *Id.* at 14-18 (citing, *inter alia*, Ind. Code § 34-20-2-4).

The circumstances under which a seller may be deemed a manufacturer and held strictly liable under the IPLA for a manufacturing defect are very narrow:

> A product liability action based on the doctrine of strict liability in tort may not be commenced or maintained against a seller of a product that is alleged to contain or possess a defective condition unreasonably dangerous to the user or consumer unless the seller is a manufacturer of the product or of the part of the product alleged to be defective.

Ind. Code § 34-20-2-3.

> If a court is unable to hold jurisdiction over a particular manufacturer of a product or part of a product alleged to be defective, then that manufacturer's principal distributor or seller over whom a court may hold jurisdiction shall be considered, for purposes of this chapter, the manufacturer of the product.

Ind. Code. § 34-20-2-4.

8

The principle issue with respect to Freud is whether or not there is a genuine issue of material fact that the Court may not hold jurisdiction over Carborundum. Under the principles discussed by the Indiana Supreme Court in *Kennedy v. Guess, Inc.*, 806 N.E.2d 776 (Ind. 2004), the Court concludes that there is a question of fact as to whether or not the Court could exercise personal jurisdiction over Carborundum. The evidence in this case is that that Carborundum, a foreign corporation, manufactures the AvantiPro disc overseas and sells it to Scintilla AG, which then sells it to Robert Bosch Tool Corporation, which then sells it to Freud. Dkt. No. 81 at 2. Further, Defendants claim that Carborundum has a U.S. subsidiary, CUMI America, Inc., which is a Kentucky Corporation, and sells products directly to distributors located throughout North America. Dkt. No. 89 at 13 n.3. But this does not prove that Carborundum could be hailed into an Indiana court with respect to the AvantiPro disc. Clearly the distribution chain for the discs is not through Carborundum's subsidiary or its direct distributors, which Freud acknowledges. *See J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787-88 (2011) (discussing limited submission to a state's authority for disputes arising out of the activities in the state). In addition, on the limited evidence presented, there is no reason to believe that Carborundum's contacts with Indiana are so frequent and systematic that it could be said that it "purposefully avail[ed] itself of the privilege of conducting activities within [Indiana], thus invoking the benefits and protections of its laws." *Id.* at 2788 (discussing requirements of general jurisdiction and purposefully directing contacts to a state). As the *Kennedy* court points out, whether or not service may be perfected is not the test; the test is whether a "court is unable to hold jurisdiction." *Kennedy*, 806 N.E.2d at 782. And, it is Freud's burden to establish there was no genuine issue of material fact,

and it has failed to do so. *Id.* There is enough evidence from which a jury could conclude that Carborundum is not subject to personal jurisdiction; therefore, Freud could be considered a manufacturer under the domestic distributor exception. Ind. Code § 34-20-2-4.

With respect to strict liability as to Home Depot, Plaintiffs assert that it is a "manufacturer" because it is a "seller who has actual knowledge of a defect in a product." Dkt. No. 84 at 13 (citing Ind. Code § 34-6-2-77(a)(1)). Specifically, Plaintiffs claim that Home Depot received RTV Reports indicating that more than 100 AvantiPro discs were returned because of a manufacturing defect, many of which were failures similar to that which caused injury to Rick. *Id.* at 13-14. Plaintiffs state that the RTV Reports are not hearsay because they are being used to show notice. Dkt. No. 94 at 1-2. Home Depot argues that the hearsay statements from its cashiers and consumers are inadmissible because they are out-of-court statements that Plaintiffs are relying on for the truth of the matter stated: the reasons for returns. Dkt. No. 89 at 11-13. Even if they are admissible, Home Depot avers that the statements contained in the RTV Reports do not establish that it had actual knowledge of the defect that caused Rick's injuries. *Id.* at 13-14. Specifically, it took Plaintiffs' two experts multiple x-rays and finite element analysis to reach a conclusion as to the reason the disc Rick used had broken. *Id.* Reliance on information supplied by a third party and noted by a store clerk to support a conclusion that Home Depot had "actual" knowledge of the specific defect and that such defect caused injury is speculative at best. *Id.* at 11-12, 14.

Under Indiana law, a "'Manufacturer' includes a seller who: (1) has actual knowledge of a defect in a product . . . ." Ind. Code § 34-6-2-77(a)(1). In this case,

Plaintiffs' expert opines that cracks in the AvantiPro disc caused the disc to break apart and that these cracks occurred during the manufacturing process. Jendrzejewski Dep. at 167, 177, 179. Home Depot had notice that the discs cracked through its RTV Reports and it relies on these reports to make safety assessments about its products. These reports and the statements in them are not hearsay for that very reason – they evidence notice of part failures, which its own employees could find no other code for than "Manufacturer Defect" – and are admissible to evidence whether or not Home Depot had actual knowledge of a defect in the discs.

Because a jury could reasonably conclude that Defendants are "manufacturers" of the AvantiPro disc, Defendants' motion for summary judgment on the strict liability claim is **DENIED**.

### B. NEGLIGENCE

Defendants contend that Plaintiffs' negligence claim fails as a matter of law because the IPLA precludes all other claims for injuries caused by allegedly defective products. Dkt. No. 81 at 10. Even if they could be considered a manufacturer or if common law negligence applies, Defendants assert that it is undisputed that neither of them designed the AvantiPro disc; therefore, they could not be negligent either under the Act or under common law. *Id.* at 10-11. Further, Freud argues that Plaintiffs never plead or identified in discovery any liability under § 400 of the Restatement (Second) of Torts, therefore, their arguments regarding Freud's apparent manufacturer liability should be stricken. Dkt. No. 89 at 18 n.7.

Plaintiffs allege that Defendants could be held negligent as a manufacturer for the same reasons they are manufacturers with respect to strict liability. Dkt. No. 84 at 13-14.

Plaintiffs also suggest that Freud may be held liable as an apparent manufacturer under Restatement (Second) of Torts § 400. Dkt. No. 84 at 18-20 (relying on *Kennedy v. Guess, Inc.*, 806 N.E.2d 776 (Ind. 2004)).

The Court agrees with Defendants that the IPLA preempts any common law negligence theory of liability with respect to the burden of proof. Therefore, even if Defendants may be considered "manufacturers", there is no dispute that they had no part in the design of the product and there is no evidence that their alleged negligent handling of the product caused damage to the AvantiPro disc. Even if common law applied, there is no evidence from Plaintiffs that either Defendant did anything to the product to cause it to fail when Rick used it. For these reasons, Defendants' Motion for Summary Judgment on Plaintiffs' negligence claim is **GRANTED**.

## IV.  CONCLUSION

For the reasons stated herein, the Court **GRANTS in part and DENIES in part** Defendants', Freud America, Inc. and Home Depot U.S.A., Inc., Motion for Summary Judgment.

IT IS SO ORDERED this 22d day of January, 2016.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Distribution:

Audrey K. Hagedorn
ICE MILLER LLP
audrey.hagedorn@icemiller.com

Judith S. Okenfuss
ICE MILLER LLP
judy.okenfuss@icemiller.com

Anne Medlin Lowe
RILEY WILLIAMS & PIATT, LLC
alowe@rwp-law.com

Joseph N. Williams
RILEY WILLIAMS & PIATT, LLC
jwilliams@rwp-law.com

William N. Riley
RILEY WILLIAMS & PIATT, LLC
wriley@rwp-law.com